**KURTZ v COLUMBUS (city) et**

Ohio Appeals, 2nd Dist, Franklin Co

Decided June 9, 1939

Henderson, Burr, Randall & Porter, Columbus; Garret S. Claypool, Chilli-cothe and James M. Butler, Columbus, for plaintiff-appellant.

John L. Davies, city attorney, Columbus, for defendants-appellees.

## OPINION

By GEIGER, J.

Submitted on appeal on questions of law from a judgment in favor of the defendants.

We are determining the correctness of the action of the Common Pleas Court on the demurrer and are favored with two written decisions by the judge, who passed upon the demurrers.

It appears from the petition, that prior to November 7, 1933, the council of the city of Columbus enacted the requisite legislation to submit to the electors of said city, on the above date, the proposition whether or not bonds of the city should be issued, outside the constitutional 15 mill limitation, in the sum of $10,403,200 representative of nine bond issues, one of which, in the sum of $824,000, was for the purpose of improving and enlarging the Municipal Light Plant of the city of Columbus. Upon the bond issue approximately 64% of the votes cast were in favor thereof.

The legislation preliminary to and the proposals submitted at the general election were predicated upon the authority of what is known as the Annat Act, consisting of Amended Senate Bill No. 403 (115 O. L. 601) effective July 20, 1933, and Amended Substitute Senate Bill No. 38 (115 O. L. Part 2, 80), effective September 25, 1933.

All of the proposals to issue bonds carried at the aforesaid election and were conditioned upon the securing of federal aid in the sum of 30% of the total cost of labor and maintenance of the respective improvements to be paid for by the proceeds of the bond issues.

The claim of the plaintiff as made in the petition respecting the invality of the proceedings, legislation, submission of proposed bond issues to vote and

subsequent steps taken thereunder appears under 17 headings which we shall not now detail, but which may later be alluded to.

The Annat Act was enacted as emergency legislation to provide exceptions to the Uniform Bond Act and to enable certain subdivisions of Ohio to participate in the federal aid provided by the National Industrial Recovery Act. Without this legislation many of the subdivisions of the state were unable to issue any more bonds because of their outstanding bonded indebtedness. The Annat Act provided that certain limitations be raised, and for certain exceptions to the Uniform Bond Act. It will be noted in detail later.

This matter being before us upon demurrer to the plaintiff's petition and amendments thereto, it is well for the moment to re-examine the petition and its prayer.

After setting out many allegations, the petition concludes with the prayer that the court issue a restraining order enjoining the defendants from further proceeding with the issuance of any of the bonds for the proposed extension of the municipal plant, and from using in any way the proceeds of said bonds, and from receiving any part of the grant and from in any way proceeding with the proposed project and from awarding any contracts or paying out any money; that the court find that the Annat Act and Senate Bill No. 403 are unconstitutional and void and that the resolutions of the city are invalid and unconstitutional; that the effective period within which said bonds may be issued has terminated; that the Annat Act is no longer applicable in the issuance of the bonds; that the election to authorize the issuance of the bonds and the levy of a tax is invalid; that the said city has exhausted its power to issue municipal plant bonds under the Annat Act or otherwise.

If any of the allegations made in the petition as amended, (which, if well plead are admitted by the demurrer to be true) support any claim of the plaintiff as to the invalidity of the proposed bond issue, it becomes our duty to over-rule the demurrer and require the city to meet the issues by an answer, if it so elects.

Some matters are of such importance that we may briefly note our conclusions.

Plaintiff prays that the court may decree that the Annat Act and the related legislation be declared unconstitutional and void. We think this matter is disposed of by the Supreme Court in the very well considered case of **State ex rel City of Columbus v Ketterer, 127 Oh St 483**, which related to the issue of sewer bonds in the city of Columbus. It was there held that the Annat Act and the related amendments are constitutional. The case is familiar to counsel and need not be discussed further but we use it as the basis of our determination that the Act together with the ordinances passed by the city in the present case are not subject to attack on the ground of violating either the Constitution of Ohio or of the United States or of the city charter, and that they do not involve an unlawful surrender of powers reserved to the state or city, in spite of the insistence of the plaintiff to the contrary.

We also readily arrive at the conclusion that the claim that the limit within which bonds may be issued has been exceeded by the amount of bonds **authorized** by the **election**, is without merit. This, we believe, is supported by the unreported case of **Anderson Realty Company v The City of Cleveland.** We believe the conclusions of the court below to the effect that the ability to issue the bonds relates not to the time of election but to the time when the bonds are to be issued is supported by the case of **State ex rel Village of Oak Hill v Brown, 125 Oh St 171**, wherein the question of the ability to issue the bonds revolved about the tax valuation, which it was claimed would not support the issue at the time the bonds were voted for, but which would support it at the time the bonds were issued.

While this case does not involve the exact point involved here the principle

seems to us applicable. This position is also supported by statute. §2293-23b, GC, provides that:

"Bonds issued within the debt limitation shall be valid and not affected by the fact that the balance of said bonds can not be issued by reasosn of bonded indebtedness."

We think this is a statutory statement of the principles we have before discussed.

The disposition of these matters narrows the point at issue to the question whether the petition discloses allegations that would support the claim that the election to authorize the issuance of said bonds and the levy of a tax is now without force or effect.

It may be of value to refer to the constitutional provisions in relation to bond issues before discussing the statutes. Article XII, Section 2, provides:

"No property taxed according to value shall be so taxed in excess of one per cent of its true value in money for all state and local purposes, but laws may be passed authorizing additional taxes to be levied outside of such limitations, either when approved by at least a majority of the electors of the taxing district voting on such proposition."

(The tax limit at the time of the vote was 1½ per cent. The vote now required is 65% instead of 50% as of the date of the election.)

Article XIII, Section 6 provides that,

"The General Assembly shall provide for the organization of cities, and incorporated villages, by general laws; and restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit so as to prevent the abuse of such power."

Article XVIII, Section 13, provides:

"Laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes."

Article XIII, Section 1 provides:

"No bonded indebtedness of the state or any political subdivision thereof shall be incurred or renewed, unless provision is made for levying and collecting annually by taxation an amount sufficient to pay the interest on said bonds and to provide a sinking fund for their final redemption at maturity."

For the interpretation of this section, see **Link v Karb, Mayor, 89 Oh St 326.**

UNIFORM BOND ACT

For provisions in relation to Uniform Bond Act see §§2293-1, GC, et seq. Many sections of this act are applicable to the instant case.

**Sec. 2293-14, GC,** provides that the net indebtedness incurred by a municipal corporation without a vote of the electors shall never exceed one per cent of the total value of all the property. It is further provided:

"The net indebtedness created or incurred by a municipal corporation shall never exceed five per cent of the total value of all property of such municipal corporation as listed for taxation."

This section was later amended as §2293-14a, GC, later to be noted.

**Sec. 2293-23b** provides in substance that if before the bonds authorized by election are issued "the bonded indebtedness of the subdivision shall exceed that allowed by law then none of said bonds or notes shall be issued and the authority to issue the same by virtue of said election **shall become void.**"

This section as amended March 16, 1935, (H.B. 255) and as now in force provides that limitations of this section shall not apply to certain bonds and one exceptions is,

"Or if such bonds are to be issued for the purpose of participating in any federal aid or any public works program or any work relief program aided in any way by the United States of America."

This amendment first became effective March 16, 1937.

During the first years of the depression many special statutes were passed which did not purport to become a part of the Uniform Bond Act, and received no sectional numbers. The first one of these special statutes appears in 115 O. L. 601, and is known as the Amended Senate Bill 403, commonly known as the Annat Act, and is an act to provide exceptions to the provisions of the Uniform Bond Act to enable subdivisions of Ohio to participate in federal aid. Section 1 provides that for the purpose of enabling municipal corporations to participate in federal aid and for that purpose only the taxing authority is authorized to issue bonds subject to the provisions of §§2293-1 to 2293-37, GC.

The act declared to be an emergency measure for the reason that under existing laws many municipalities have issued bonds up to their debt limitations in order to permit subdivisions to participate in the federal public works program and receive the benefit of grants so that the citizens of Ohio will not be prejudiced by aid being granted to other states, etc. This act was passed July 1, 1933, and approved July 18, 1933. In 115 Ohio Laws, Part 2, p. 80, is found the amended substitute for Senate Bill 38, and is captioned, "To Provide Further Exceptions to the Uniform Bond Act and to amend Section 1 of Senate Bill 403;" approved July 18, 1933. It provides that for the purpose of enabling the municipal corporation to participate in the federal aid and for that purpose only the taxing authority is authorized to issue bonds subject to the provisions of the Uniform Bond Act and if the question be submitted to a vote only the affirmative vote of a majority is required. Certain other liberalizing provisions are incorporated. The act was passed September 20, 1933, and approved September 22, 1933.

In 116 Ohio Laws, 580, appears the House Bill providing for an amendment to the much amended Senate Bill 38. The limitations are much the same as in the original act. If the question of issuing the bonds is submitted to a vote, the issue shall require only the affirmative vote of at least 65 per cent of those voting on the proposition. It is provided that "this act shall apply to all proceedings including those pending at the time the act takes effect." It was approved on the 7th day of June, 1935.

House Bill 124 was to supplement §2293-23, GC, by the enactment of supplemental §2293-23b. It supplements §2293-23 and provides by §2293-23b, that if before bonds authorized by election under the terms of §2293-23 "the bonded indebtedness of the subdivision shall exceed that allowed by law then none of said bonds or notes shall be issued and the authority to issue the same by virtue of said election shall become void."

It is claimed by counsel for plaintiff that the allegations made in the first and second amendment to the petition are sufficient to bring the proposed bond issue within the provisions of §2293-23b, which we think important enough to quote in full:

"Sec. 2293-23b. If before bonds authorized by election under terms of §2293-23 or notes in anticipation of such bonds are issued the bonded indebtedness of the ssubdivision shall exceed that allowed by law, then none of said bonds or notes shall be issued and the authority to issue same by virtue of said election shall become void."

If, as claimed by plaintiff, the allegations of his amendment are such as to make the bonds void, then we must determinate whether or not subsequent legislation re-establishes the validity of the vote and the validity of the bonds issued in pursuance thereof. This is claimed by the city to have been done under two separte amendments, one amending §2293-23b and one, §2293-14a.

Amended House Bill No. 255 was an act to amend §2293-23b relative to limitation of issuance of bonds. The bill as amended carries most of the provisions of the original §2293-23b known as House Bill 124 and heretofore referred to. In addition to the former provisions there is the further provision under the

limitation that the section shall not apply to enumerated bonds,

"if such bonds are to be issued for the purpose of participating in any federal aid or any public works program or any work relief program aided in any way by the United States of America."

The amendment was passed as an emergency and approved March 16, 1937.

Amended Senate Bill No. 443 was passed to supplement §2293-14 by enacting §2293-14a. §2293-14a provides:

"Bonds authorized by vote prior to January 1, 1935, and hereafter issued for the purpose of constructing public improvements aided in any way by the United States of America * * * shall at the time of issuance be exempted from all debt limitations."

The supplemental provision was passed as an emergency, and approved March 14, 1938.

The pith of the amendments to the petition without setting out the special factual allegations is that by October 3, 1934, the city by the issue of bonds had exhausted its power for the creation of indebtedness within the limitations of the Annat Act; that the bonded indebtedness of the city for a long period prior to March 3, 1937, continuously exceeded that allowed by law, and that the city had long prior thereto exhausted its right and power to issue any bonds including the municipal plant bonds under the provisions of the Annat Act, and had wholly used and exhausted its power and authority.

The final amendment to the petition alleges that by October 3, 1934, said city had exhausted its power for the creation of indebtedness within said limitation; that since July 6, 1936, the city, its officers and agents had been without right, power or authority to issue any Annat Act bonds under or by virtue of any election or the ordinances and resolutions described in the petition and particularly without any right, power

or authority to issue any part of said municipal light bonds.

In view of the ruling of the court below we are inclined to the opinion that the allegations are of factual matters and not conclusions of law and that a demurrer admits their truth. If the facts pleaded are sufficient to bring the bonds within the voiding provision of §2293-23b, which provides that if the bonded indebtedness shall exceed that allowed by law, "then none of said bonds or notes shall be issued and the authority to issue the same by virtue of said election shall become void," then the demurrer should be overruled unless the voiding provisions of the section are later withdrawn and the validity of the election restored.

Sec. 2293-14a provides that bonds authorized by a vote prior to January 1, 1935, and hereafter issued "for the purpose of constructing public improvements aided in any way by the United States of America * * * shall at the time of issuance be exempted from all debt limitations."

## THE QUESTION

The question is therefore clearly presented as to whether or not a bond issue that has been authorized under existing authority by the vote of the people, but which by provision of an act in force at the time of the voting became void by reason of excessive bonded indebtedness, can be restored to vitality and be the basis of a legal issue of bonds through the device of a legislative exemption passed at a date subsequent to the time said bonds became void on account of excessive indebtedness.

The city in its reply brief of January 9. 1939, on page 18, et seq.. discusses the matter at length. We will quote a short part of the argument:

"By virtue of the vote of the people at the November election of 1933, by which the proposed issue was authorized, there was then and at that time established an existing fact which a future general assembly could recognize and carry into effect regardless of any

other intervening fact or legislation upon the subject."

The provision of §2293-14a is then alluded to and the further comment is made.

Counsel states:

"One General Assembly can not bind the legislative hands of a future General Assembly in such manner."

Counsel states that the Legislature might temporarily destroy the effect of an existing fact, but could not destroy the fact itself.

The court below discusses the question to which we have just alluded, and states in substance that the suggestion that House Bill 544 "killed" the proceedings and that what was thereby dead could not thereafter be revived is, without merit because inapplicable. House Bill 544 did not and could not destroy, wipe out or annihilate the existing fact that pursuant to laws existing at the time the vote was had electors in fact had authorized the issue of the bonds by a majority which was all that was then required. The Legislature perhaps could temporarily destroy the effect but not the fact. Whatever the Legislature did subsequent to the vote it had the power to undo. Under the sections of the Constitution the General Assembly is supreme in the matter of restricting the powers of cities to borrow money, limited only by constitutional limits which were not exceeded by reason of the vote taken on the bonds. This statement of counsel and of the court presents the right of the city in reference to these bonds in the strongest terms possible.

Exemption No. 3 of the schedule relates to levies authorized by the vote of the electors.

## THE REAL ISSUE

If the vote which was required by the Constitution became void by reason of any legislative enactment, can it be restored to life by a subsequent enabling act of the Legislature?

There is no quarrel with the argument that one Legislature may repeal the act of a former Legislature, but the real question is whether when one Legislature declares an authority granted by a vote to be void, can a subsequent Legislature restore the validity of the vote by providing that the limitation shall not apply to the bonds or that the bonds authorized by a vote prior to January 1, 1935, and hereafter issued for the purposes named shall at the time of the issuance be exempted from all debt limitation.

We have already set out the argument of the city on this point and the opinion of the court below, in both of which there is much logic.

We think that in order to determine the correct view we may well again consider the provisions of the Constitution as well as the limitations heretofore imposed by statute on the issuing of bonds. One provision of the Constitution provides that no property shall be taxed in excess of 1% of its true value in money for all purposes but that laws may be passed authorizing additional taxes to be levied when approved by a majority of the electors. Another provision is that the General Assembly shall provide for the organization of cities and restrict their power of taxation in borrowing money and loaning their credit so as to prevent the abuse of such power. Still another section provides that laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes. The people themselves since the bond issues were voted in 1933 have imposed additional limitations through constitutional provisions. At that time property could not be taxed in excess of 1½%. That limitation has been reduced to 1%. At that time the statute only required a majority of the votes to authorize the bonds. That proportion of the vote was increased at one time to 55% and now stands at 65%.

We can not escape the fact that the people, the Constitution and the legislation have been constantly endeavoring to protect the tax payer against the tax spender. The people are conscious of the fact that a very well intentioned

group of officials may desire to make certain very commendable expenditures but the people still wish to retain control of their own purse-strings to at least some extent.

## THE POWER TO IMPOSE TAXES

The power to impose taxes should not be extended beyond the clear intendment of the statutes. Restraint is not usually exercised by the tax spender. The laws should, where their interpretation justifies it, be so construed to hold the spender in check. That is the manifest intent of the Constitution.

We are not concerned with the motive which led the people in 1933 to vote nearly a million dollars for the extension of the Municipal Light Plant. We do, however, have the conviction that if the Constitution, the fundamental law, provides that certain things must be done in order to issue certain bonds, and the law at the time of the vote provided that the vote should be void in case of over indebtedness, and the authority of the vote has been pertinently challenged by the petition, it can not be again brought to life by a subsequent legislative enactment. In our judgment the only way to legally issue those bonds is to have a new vote under the terms of the Constitution and statutes as they may exist at the time the new vote is taken.

We realize that there is value in providing public works that will give men employment, but we can also well realize that those who will ultimately pay the bonds have a right to the protection of the constitutional provision that no property shall be taxed in excess of the rate provided for unless the additional indebtedness shall be voted for by the people.

Jones, J., in the case of **State ex rel. v Bish, 104 Oh St 206, at page 214,** states:

"The provisions of our present constitution providing that 'no tax shall be levied except in pursuance of law' and that 'laws may be passed to limit the power of municipalities to levy taxes and incur debts,' have been construed in the cases named and these provisions of the constitution are just as effective in limiting the power to incur debts as in limiting the power to levy taxes."

On page 215 Judge Jones speaks of matters that arose during the increasing war prices, and his statements well describe the situation now confronting us, due to depression and unemployment that we think they are well worth reading.

The answer to this may be made that the city recognized this condition and submitted the question to the electors who endorsed the issue of bonds. That answer would be perfectly good were it not for the fact that the Legislature also provided tax limitations which when reached destroyed the authority of the vote. The question we have before us is whether that authority, having been destroyed, may be restored by an act of the Legislature which in itself impinges upon the constitutional provision.

Judge Jones states at page 212:

"The Constitution has laid a restraining hand upon all municipalities chartered and unchartered. It has specifically maintained legislative control over municipalities by restricting their power to levy taxes or to incur debts. * * * The municipal powers to incur debt and to levy taxes for its payment are closely interwoven. The Constitution recognizes by interposing a check upon both."

There is another matter which has not been stressed in the plaintiff's petition nor discussed by the defendant, which, in our judgment, requires careful consideration.

Article XII, Section 2, provides in substance that no property taxed according to value shall be so taxed to exceed 1% of its true value in money for all state and local purposes. It further

provides that laws may be passed authorizing additional taxes outside such limitation in two methods:

"1. Either when approved by at least a majority of the electors of the taxing district; or
2. When provided by charter."

We call attention to the statement of Judge Jones in **State ex rel v Bish, 104 Oh St 206.**
We arrive at the conclusion that there is a very definite constitutional limitation upon the levying of taxes beyond the limits named in the constitution.

"These provisions of the Constitution are just as effective in limiting the power to incur debts as in limiting the power to levy taxes."

The position taken by the court in State v Bish was again under consideration in **State ex rel v Kountz, 129 Oh St 272, 2 OO 161,** the second syllabus of which is:

"A constitutional provision imposing a tax limitation, by implication also imposes a debt limitation."

This case while frankly concerned with "unvoted" general obligation bonds of the city is replete with pertinent observations which may be applied to the situation we have before us of the attempt to restore vitality to the authority of the vote which the legislature has declared to be void.
The Legislature under the stress of the depression and for the purpose of providing funds to carry out federally endorsel projects, has provided certain exemptions in §§2293-23b and 2293-14a. The limitation shall not apply to bonds issued in aid of any public works program or any work relief program aided in any way by the United States of America, as set out in §2293-23b and bonds authorized by a vote prior to January 1, 1935, hereinafter issued for the purpose of constructing improvements in any way aided by the United States, shall at the time of the issuing be exempted from all debt limitations as provided by §2293-14a.

It seems to us that the Legislature, in its zeal to raise the money for relief purposes, has overlooked the protective provisions of Article XII, Section 2, relating to the limits of taxation.

"These provisions of the Constitution are just as effective in limiting the power to incur debts as in limiting the power to levy taxes."

In our judgment, the Legislature has not the power to extend the provisions as to limitation by the two statutes above referred to, so as not to apply to bonds issued for Federal aid, **when the money necessary to pay those bonds would impose upon the taxpayers a greater burden than is permitted by the constitution.**
If this device were endorsed, then the protection against excessive taxation could be overthrown by the mere device of making the bonds or indebtedness incurred not subject to limitations. The Legislature can change limitations which the Legislature itself has imposed, but the limitation that the constitution has imposed, can not be changed except as provided by the constitution, and that is by a vote of the people. The limitation as to bonds issued for Federal aid were not in effect at the time the vote was taken and we are of the opinion that the Legislature may not now increase the burden upon the taxpayers by the easy device of declaring that certain bonds are not within the limitation, which is a limitation imposed by the legislature, and disregard the limitation that is imposed by the constitution itself.

THE PROPER INTERPRETATION OF STATUTES RELATING TO TAXATION
The principles that are pertinent to the correct interpretation of laws relating to taxation are so well known that they need only to be mentioned. A good statement is found in the case of

City v Connor, 55 Oh St 82, at page 91:

See State, ex rel v Cooper, 97 Oh St, 86, syllabus 3:

This case may not be as pertinent as others, but it is to the effect that any diminution of the sovereign function of taxation must appear in a clear and unambiguous constitutional provision. In the case of Board of Education v Briggs, 114 Oh St 415, it is held that the statutes providing for a vote upon a bond issue are mandatory and must be substantially complied with.

See City of Barberton v Dutt, 22 Oh Ap 200.

The sum of all this is that there is a barrier erected for the protection of the people by reason of the constitution which may not be disregarded, and that statutory proceedings must be strictly construed in favor of the taxpayer.

We are of the view that the method adopted by the legislature for re-establishing the authority for a voided vote does not meet the constitutional requirement, and further that a constitutional provision imposing a tax limitation, by implication also imposes a debt limitation.

So many statutes with amendments and supplements thereto have been cited that for convenience we re-state where they may be found.

House Bill 124, supplementing §2293-23b, 115 O. L. 442. Amended Senate Bill No. 403, 115 O. L. 601. Amended Substitute Senate Bill No. 38, 115 O. L. Part 2, 80. House Bill No. 544, (Amended Annat Act), 116 O. L. 580. Amended House Bill 255 to amend §2293-23b, passed March 3, 1937, 117 O. L. 44. See also H. B. 862, 117 O. L. 867. Amended Senate Bill No. 443, enacting §2293-14a, approved March 14, 1938, 117 O. L. 826.

Due to the many acts and the many questions involved it will be quite natural that there are some inaccuracies in this opinion, which, however, will not affect the conclusion of the court.

### CONCLUSION

For the reasons stated, we are of the opinion that as the demurrer admits the allegations of the petition which de-finitely raise the issue of exceeding the tax limitation which would render the vote void, the demurrer should be overruled.

Judgment reversed. Demurrer overruled. Case remanded.

BARNES, J, concurs in judgment. HORNBECK, PJ, dissents.